UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| BLAIR L. STRONG, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:13-cv-296 |
| | ) | |
| CITY OF ATHENS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This civil rights action stems from a series of "bar checks" at plaintiffs' restaurant in Athens, Tennessee. Two motions filed by defendants Lieutenant Daniel Ruskey ("Lt. Ruskey") and Trooper Rick Ray ("Trooper Ray")[1] are pending: the motion for judgment on the pleadings [Doc. 15] and the motion for summary judgment [Doc. 36]. Because the plaintiff's amended complaint supersedes the original complaint, *see In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 589 (6th Cir. 2013), the motion for judgment on the pleadings [Doc. 15] will be **DENIED as moot**.

Lt. Ruskey and Trooper Ray filed exhibits and a memorandum of law in support of their motion for summary judgment [Docs. 36-1 – 36-7, 37, 38], to which plaintiff responded [Doc. 42] and defendants replied [Doc. 44]. After hearing oral argument on January 26, 2015 and carefully considering the pending motion and related pleadings in

[1]In addition to the claims against Lt. Ruskey and Trooper Ray, the amended complaint asserts claims against the City of Athens, Tennessee and Officer Randy Hamilton of the Athens Police Department. Pursuant to a stipulation of dismissal [Doc. 40], the City of Athens and Officer Hamilton have been dismissed from this case.

light of the entire record, the defendants' motion for summary judgment [Doc. 36] will be **GRANTED**.

## I. Relevant Facts

As the Court is obliged to do in reviewing a motion for summary judgment, the facts of this case will be viewed in the light most favorable to the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiff BStrong Enterprises, LLC ("BStrong") is a corporation operating as an entertainment venue selling alcoholic beverages at the Open Door restaurant in McMinn County, Tennessee [Doc. 35 at ¶ 9(a)]. Plaintiff Blair L. Strong is the sole owner and proprietor of the Open Door.[2] His wife, plaintiff OneYang Strong, manages the Open Door [Doc. 36-4 at p. 3]. Lt. Ruskey and Trooper Ray are officers of the Tennessee Highway Patrol ("THP") [Docs. 45-4 at p. 47; 45-2 at p. 4].

As background, plaintiffs claim that in August 2011, Trooper Ray approached Mr. and Mrs. Strong in the early morning hours while they were on the front steps of the Open Door [Doc. 35 at ¶ 23(a); Doc. 36-4 at p. 17]. At that time, Trooper Ray's daughter was included in an ongoing investigation of underage drinking in a parking lot across from the Open Door [Doc. 35 at ¶ 23]. Trooper Ray approached the Strongs and demanded that they produce identification [Doc. 35 at ¶ 23(a)]. When Mr. Strong

[2]Although the Amended Complaint claims that plaintiff OneYang Strong, Mr. Strong's wife, is also a corporate officer of BStrong [Doc. 35 at ¶ 9(c)], Mr. Strong testified that she has never been a corporate officer and he is the sole owner and proprietor of the business, a point to which she agreed [Docs. 36-4 at p. 3—4; 36-6 at p. 3].

objected, Trooper Ray became angry and told Mr. Strong "that the next time [Trooper Ray] comes to the Open Door that he would find a way to place Blair in handcuffs, and "we" would conduct bar checks on his business from now on." [*Id*. at ¶ 23(b)]. The Strongs "understood" Trooper Ray's comments "as a threat to shut down the business without justification and to use the bar checks as a pretext to harass and intimidate plaintiffs and plaintiff's customers with the goal of preventing plaintiffs from conducting business." [*Id*. at ¶ 23(c)]. It is undisputed that Lt. Ruskey was not present during this event. The plaintiffs contend that the August 2011 incident forms the basis for the defendants' subsequent "agenda" to "get" the plaintiffs, but there are no facts in the record to support this supposition.

Prior to 2012 and from January 2012 up to November 2012, THP officers, including Lt. Ruskey and Trooper Ray, conducted "bar checks" or tavern checks at the Open Door and other businesses in McMinn County [Doc. 35 at ¶ 12; Doc. 36-3 at ¶ 2]. This was an attempt by the officers to stem the incidents of alcohol-related fatality accidents [Doc. 36-3 at ¶ 2]. Each bar was checked 1-2 times per month and each bar check normally lasted 10-15 minutes [Doc. 36-3 at ¶ 2]. The amended complaint alleges that defendants, with other unidentified officers, would enter the Open Door to conduct warrantless searches and non-consent searches of all portions of the business, demand production of patrons' identification, and "stand around within the business for prolonged periods of time simply glaring at the patrons." [Doc. 35 at ¶¶ 13—14]. Mr. Strong testified that 10 minutes is a "prolonged period of time" and that a bar check should only take "zero minutes" [Doc. 36-4 at pp. 11, 21]. Mr. Strong also testified that the

defendants did not "glare" at the Open Door patrons, they merely watched them [Doc. 36-4 at p. 13]. The amended complaint also alleges that these bar checks interfered with plaintiffs' ability to conduct business and make profits and scared away patrons [Doc. 35at ¶ 15]. However, Mr. Strong testified that he could not name any particular customer who had stopped coming to the Open Door because of the bar checks. "I don't know why they're not coming because I don't ask them, but I can only assume." [Doc. 36-4 at pp. 15—16].

Two specific bar checks are the subject of this action. On October 21-22, 2012, Lt. Ruskey participated in a bar check at the Open Door and observed Mr. Strong serve alcohol to a female customer who appeared to be underage[3] [Doc. 36-3 at ¶ 3]. When Lt. Ruskey asked her for identification, she did not have any identification [*Id*.]. Lt. Ruskey, believing that a crime may have been committed, then asked Mr. Strong for his identification, which he repeatedly refused to provide [*Id*.]. Lt. Ruskey followed Mr. Strong around the bar for some period of time asking for his identification [*Id*.]. Lt. Ruskey also asked all the customers in the Open Door to hold up their identification, which he claims took only about 1-2 minutes [*Id*.]. Mr. Strong complains that the officers went into "private" areas of the Open Door -- the kitchen, bar area, and waitress station [Doc. 36-4 at p. 10]. This bar check lasted approximately 45 minutes [Doc. 36-5 at p. 47].

[3]It is undisputed that Trooper Ray was not present during the October 21-22, 2012 bar check at the Open Door [Doc. 36-2 at ¶ 2].

On November 2, 2012, Lt. Ruskey and Trooper Ray participated in a bar check and audit of the Open Door with Kim Boleyn, an agent of the Tennessee Alcoholic Beverage Commission ("ABC") [Doc. 35 at ¶ 25; Doc. 36-2 at ¶ 3; Doc. 36-3 at ¶ 4]. Agent Boleyn testified that they intended to conduct a "saturation" for all of the bars in Athens that evening and she also intended to do a routine food service audit at the Open Door [Doc. 42-2 at p. 5]. She described a "saturation" as when different state and local law enforcement agencies come together to saturate the establishment checking for violations [*Id*. at p. 14]. This "saturation" was planned after Lt. Ruskey contacted Agent Boleyn to ask questions as to state rules and regulations regarding establishments that sell liquor by the drink [*Id*. at pp. 18—19].

During the November 2, 2012 bar check, Agent Boleyn was meeting with Mrs. Strong in the office, while THP Sergeant Mike Brown, who is not a defendant, was standing in the threshold of the office doorway [Doc. 42-2 at pp. 7, 9, 39—40]. Mr. Strong entered the office and attempted to close the door on Sergeant Brown, striking him on the elbow with the door [Doc. 42-2 at pp. 9—11, 15, 40—41]. A physical scuffle ensued which resulted in Sergeant Brown arresting Mr. Strong for assault [Doc. 42-2 at pp. 41—42]. Agent Boleyn testified that they did not check any other bars on November 2 as intended because they went to the emergency room with Sergeant Brown [*Id.* at p. 15]. Mr. Strong has admitted that neither Lt. Ruskey nor Trooper Ray arrested him [Doc. 36-4 at pp. 17—18]. Mr. Strong complains that the officers entered the office, which was private, but did so while Agent Boleyn was there [Doc. 36-4 at p. 20]. Following a preliminary hearing, a McMinn County General Sessions judge found that probable cause

existed to bind Mr. Strong over to the grand jury for the assault charges and a grand jury indicted Mr. Strong for the assault [Doc. 36-4 at p. 81; Doc. 42-2 at pp. 78—79]. Mr. Strong was ultimately acquitted of the assault charges [Doc. 35 at ¶ 27].

## II. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## IV. Analysis

The amended complaint alleges that the defendants violated the plaintiffs' following civil rights under 42 U.S.C. § 1983: (a) deprivation of liberty and property without due process of law; (b) "deprivation of the right of every man to pursue his profession without the imposition of unequal or discriminatory restrictions as guaranteed under the Privileges or Immunities Clause of the 14th Amendment to the United States Constitution;" (c) deprivation of liberty and property without due process of law; (d) equal protection under the law; and (e) unreasonable searches and seizures as guaranteed under the 4th Amendment of the United States Constitution [Doc. 35 at ¶ 29].[4] The

[4]Plaintiffs state that they have "discarded" their claims under 42 U.S.C. § 1981 and intentional interference with business relations by virtue of the amended complaint and therefore defendants

claims appear to focus only on the October 2012 and November 2012 bar checks and will be analyzed below.[5]

A. Due Process Claims

The Fourteenth Amendment's due process clause protects life, liberty, and property interests. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 n.3 (1985). Plaintiffs due process claims appear to be identical and therefore redundant [Doc. 35 at ¶ 29(a), (c)]. The officers argue that plaintiffs have failed to set forth any facts to support this claim as there are no facts to show that defendants deprived them of any liberty or property interests. The officers point to state law which permit them to conduct and/or assist with bar checks, Tenn. Code Ann. § 57-3-412(b)(1),[6] and that ABC officers and highway patrol officers have authority to enforce laws related to alcoholic beverages, Tenn. Code Ann. § 57-3-412(b)(2).[7] The officers also point to the ABC Rules and

are entitled to summary judgment on those claims [Doc. 42 at p. 7]. Because the amended complaint supersedes the original complaint, *see In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 589 (6th Cir. 2013), and those claims are not contained in the amended complaint, there is nothing on which to grant summary judgment.

[5]This case was filed on August 23, 2013 [Doc. 1-1], and therefore defendants argue that any claims prior to August 23, 2012, are barred by the one-year statute of limitations in Tenn. Code Ann. § 28-3-104(a). *Jackson v. Richards Medical Co.,* 961 F.2d 575, 578 (6th Cir. 1992). Plaintiffs have not disputed this argument. Thus, the Court agrees that any claims prior to August, 23, 2012, including the 2011 incident between plaintiffs and Trooper Ray, are time-barred.

[6]Tenn. Code Ann. § 57-3-412(b)(1) states that, "[t]he members of the highway patrol shall be authorized and it shall be their duty to assist the county and municipal police authorities to enforce this chapter, and any other chapter relating to the manufacture, sale or distribution of alcoholic beverages … ."

[7]Tenn. Code Ann. § 57-3-412(b)(2) states that, "[i]nspectors, agents or officers appointed by the commission shall be cloaked with and have the duty, power and authority to exercise the same functions and duties as conferred by law upon the highway patrol in the illegal traffic of intoxicating liquors. Inspectors, agents and officers of the commission shall have concurrent

Regulations which grant ABC agents warrantless access "to all parts of a licensed premise … at all times." Tenn. Comp. R. & Regs. 0100-01-.03 (2010). Thus, defendants argue that they were within their rights to enter the Open Door, a public establishment, look around and check the identification of the patrons and there was no deprivation of a liberty or property interest [Doc. 37 at pp. 7—11].

As the defendants' reply notes [Doc. 44 at p. 4], the plaintiffs' response brief does not address the due process claims, so there is no clear articulation of what liberty or property interest has been deprived. Further, there is no articulation of whether the plaintiffs are asserting a procedural or a substantive due process claim, although the Court assumes that the plaintiffs intend to assert a substantive due process claim.[8] When a plaintiff brings a substantive due process claim under Section 1983 within the law enforcement context based on any alleged conduct other than excessive force, the claim

---

authority with the highway patrol ... for the express purpose of enabling the commission properly to enforce the laws and regulations pertaining to traffic in alcoholic beverages."

[8]To the extent the plaintiffs intended to assert a procedural due process claim, it is settled that "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). "The fundamental requirement of due process is the right to be heard 'at a meaningful time and in a meaningful manner.'" *Mertik v. Blalock*, 983 F.2d 1353, 1364 (6th Cir. 1993) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). "[U]nauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful [state] postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Therefore, in order to state a procedural due process claim under § 1983, "the plaintiff must attack the state's corrective procedure as well as the substantive wrong." *Meyers v. City of Cincinnati*, 934 F.2d 726, 731 (6th Cir. 1991); *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 588 (6th Cir. 2004) (a plaintiff may not seek relief under § 1983 "without first pleading and proving the inadequacy of state or administrative processes and remedies"). There are no allegations of the inadequacy of state or administrative processes and remedies to redress any of the alleged due process violations in the amended complaint and thus any procedural due process claim, if asserted, would fail as a matter of law.

"must be based either on a violation of an explicit constitutional guarantee (*e.g.*, a fourth amendment illegal seizure violation) or on behavior by a state actor that shocks the conscience." *Braley v. City of Pontiac*, 906 F.2d 220, 225 (6th Cir. 1990); *see Upsher v. Grosse Pointe Public School Sys.*, 285 F.3d 448, 453 (6th Cir. 2002) (a plaintiff must prove that the governmental actor either intentionally injured the plaintiff or acted arbitrarily in the constitutional sense).

The Court further assumes that plaintiffs' due process claim rests on the allegations that defendants interfered with plaintiffs' ability to conduct business[9] and that they endured a loss of customers as a result of the October 21-22, 2012 bar check [Doc. 35 at ¶ 24]. However, Mr. Strong testified that he cannot identify any customers who no longer come to the Open Door because of bar checks, only that he "assumes" the bar checks are the reason for the decline in his business. Mr. Strong's assumptions and subjective beliefs are not a sufficient basis to deny summary judgment. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992). Plaintiffs have not identified any facts or disputed questions of fact which support this claim.

Further, plaintiffs' reliance on *Bacon v. Patera*, 772 F.2d 259 (6th Cir. 1985), as supporting the right to earn a living as a protected liberty interest is misplaced. The plaintiff in *Bacon* was a licensed private investigator whose right to engage in that profession arose under state law, *i.e.*, he had a "governmental right, benefit or entitlement" protected by the due process clause. *See Jackson v. Heh*, 2000 WL 761807, at *7 (6th Cir. June 2, 2000) (citing *Mertick v. Blalock*, 983 F.2d 1353 (6th Cir. 1993)).

[9]Plaintiffs' counsel described it at oral argument as the "liberty to engage in commerce."

Here, plaintiffs have only complained about a decline in the profitability of their privately run business. There is no constitutional guarantee to financial success in private enterprise. Further, it is undisputed that Trooper Ray was not present during the October 2012 bar check and therefore cannot be liable for any claim arising from it. Moreover, Lt. Ruskey's actions during the October 2012 bar check do not shock the conscience. Thus, the plaintiffs have failed to state a substantive due process claim related to the October 2012 bar check.

Plaintiffs allege that "one of the other officers tried to enter [the office] without permission of the plaintiffs or without a search warrant" during the November 2, 2012 bar check [*Id*. at ¶ 25], and that Mr. Strong was arrested "without probable cause or any justification" [*Id*. at ¶ 26]. However, Mr. Strong also admitted that the officers entered the bar office on November 2 only with Agent Boleyn, which they were permitted by law to do, and that Sergeant Brown, not Lt. Ruskey or Trooper Ray, arrested him. Moreover, it is undisputed that the General Sessions judge found probable cause to sustain the assault charge against Mr. Strong and that he was indicted on that charge by the grand jury. Thus, the grand jury indictment conclusively determines that Sergeant Brown had probable cause to arrest Mr. Strong. *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975); *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002). To the extent that plaintiffs' due process claim rests on the alleged search or seizure, that claim is more appropriately analyzed under the Fourth Amendment jurisprudence than the generalized notion of due process. *See Graham v. Conner*, 490 U.S. 386, 395 (1989); *Adams v. City of Auburn Hills*, 336 F.3d 515, 518 (6th Cir. 2003). Thus, there can be no substantive due process

claim related to the November 2, 2012 bar check and plaintiffs have not suffered a constitutional violation of due process related to the October or November 2012 bar checks.

B. Privileges and Immunities

The amended complaint alleges that the defendants deprived plaintiffs of their right "to pursue his [sic] profession without the imposition of unequal or discriminatory restrictions as guaranteed under the Privileges or Immunities Clause of the 14th Amendment to the United States Constitution" [Doc. 35 at ¶ 29(b)]. The defendants' motion and opening brief assumed that plaintiffs had conceded this claim [*see* Doc. 36 at p. 4, n.1; Doc. 37 at p. 6, n.3]. In response, plaintiffs state that they have only conceded the Privileges and Immunities claim "under Article IV of the United States Constitution" but not their Privileges and Immunities claim under the Fourteenth Amendment [Doc. 42 at p. 12]. Plaintiffs argue that *McDonald v. City of Chicago*, 561 U.S. 742 (2010), is evidence that a claim under the Privileges and Immunities clause of the Fourteenth Amendment remains a viable cause of action [*Id*.].

In response, defendants argue that this claim, as reasonably interpreted, is another version of plaintiffs' equal protection and due process claims [Doc. 44 at p. 2]. Defendants contend that a Privileges and Immunities claim is "a very rare type of claim" and that *McDonald* is inapposite to the present case [*Id*. at pp. 2—3]. Defendants are correct.

The Privileges and Immunities Clause of the Fourteenth Amendment provides: "All persons born or naturalized in the United States and subject to the jurisdiction

thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. amend. XIV, § 1. The plaintiffs claim that defendants deprived them of their "right to earn a living" and have thereby deprived them of one of the "privileges and immunities" of national and state citizenship.

In the *Slaughter-House Cases,* 83 U.S. (16 Wall) 36, 21 L.Ed. 394 (1872), the Supreme Court upheld a Louisiana statute which granted a monopoly of the slaughtering business in a specified geographical area. Justice Miller, writing for the majority, found that States are only obligated under the Privileges and Immunities Clause to protect certain very limited rights of national citizenship, and it does not permit the federal government to protect the citizens of a State against the legislative power of their own State. 83 U.S. (16 Wall) at 74. The effect of the *Slaughter-House* ruling was to reduce the Privileges and Immunities Clause to a practical nullity. *Craigmiles v. Giles*, 110 F. Supp. 2d 658, 665 (E.D. Tenn. 2000), *aff'd*, 312 F.3d 220, 229 (6th Cir. 2002) (the *Slaughter-House* cases held that the Privileges and Immunities Clause "did not protect an individual's right to pursue an economic livelihood against his own state"). The *McDonald* Court explicitly declined to disturb that ruling and proceeded to analyze the question of whether the right to keep and bear arms applies to the States under the due process clause. 561 U.S. at 759. Thus, the *McDonald* case did not "revive" the Privileges and Immunities Clause as plaintiffs suggest. Moreover, the Privileges and Immunities clause of the Fourteenth Amendment only applies to natural persons and would therefore not apply to BStrong Enterprises, LLC. *Hague v. Committee for Indus.*

*Org.*, 307 U.S. 496, 514 (1939); *Buda v. Saxbe*, 406 F. Supp. 399, 404 (E.D. Tenn. 1974). Accordingly, defendants are entitled to judgment as a matter of law on this claim.

C. Equal Protection

The Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Defendants argue that plaintiffs cannot sustain an equal protection claim because they have presented no facts that the Open Door was treated differently than any other bar in McMinn County. Further, despite plaintiffs' allegation that the Open Door is a minority-owned business due to Mrs. Strong's Asian heritage, defendants note that Mr. Strong testified that he is the sole corporate officer and owner of the Open Door and that Mrs. Strong has never been a corporate officer [Doc. 37 at p. 11].

In response, plaintiffs argue that Lt. Ruskey knew Mrs. Strong was Asian and that the defendants admitted she was a corporate officer in their initial answer to the complaint. Plaintiffs assert that defendants had an agenda, born out of the 2011 incident and their personal resentment of Mr. Strong, to "get" plaintiffs [Doc. 42 at p. 13]. Plaintiffs suggest that the facts related to the November 2 bar check are sufficient for the jury to decide whether the Open Door was targeted due to Mrs. Strong's race, "especially since the 'saturation' of Athens was limited to the plaintiff" [*Id*. at p. 11]. Plaintiffs also suggest that the defendants "conned" Agent Boleyn into the audit so they could "embed" themselves into the audit as justification to enter the private portions of the Open Door [Doc. 42 at p. 11]. Plaintiffs' suppositions and extrapolations are unsupported by the facts.

In order to state an equal protection claim, plaintiffs must first show that the government treated similarly situated persons differently. *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 574 (6th Cir. 2008); *see Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005) ("states cannot make distinctions which either burden a fundamental right, target a suspected class, or intentionally treat one differently from others similarly situated without any rational basis for the difference"). The plaintiffs' failure to identify *any* similarly situated persons or businesses treated differently mandates a grant of summary judgment in defendants' favor. *Id.* at 575.

Plaintiffs cannot create a question of fact by disputing their own sworn testimony that Mrs. Strong is not a corporate officer. *See, e.g., Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (party cannot contradict deposition testimony with subsequent affidavit). Even assuming, *arguendo*, that Mrs. Strong was an owner of the business, this mere allegation does not make out a claim that the Open Door was targeted for race-based discriminatory reasons. Plaintiffs have presented no facts to support their allegations that Mrs. Strong's race played a role in the bar checks. Further, plaintiffs' supposition that Lt. Ruskey knew Mrs. Strong was Asian is unsupported by any facts in the record; Lt. Ruskey was not present during the August 2011 encounter so there is no evidence he knew either of the individual plaintiffs prior to the October 2012 bar check. Although Trooper Ray testified that he discussed the August 2011 incident with Lt. Ruskey [Doc. 42-4 at p. 73], there is no evidence that a plan was formed to target the Open Door or the Strongs as alleged. Finally, although the Open Door was the only business checked during the planned "saturation" on November 2, 2012, the defendants

have explained that this was due to the altercation between Mr. Strong and Sergeant Brown and plaintiffs have presented no proof to the contrary. Accordingly, plaintiffs cannot state a claim for equal protection as a matter of law.

D. Unreasonable Search and Seizure

With respect to the claims of unreasonable search and seizure, plaintiffs allege that defendants' conduct in the bar checks "was tantamount to an occupation of the plaintiffs' business without proper cause and more akin to that of an occupying army" [Doc. 42 at p. 8]. Specifically, plaintiffs complain that the defendants entered areas of the Open Door that were private, stayed for 45 minutes during the October 2012 bar check, and forced all of the patrons to provide identification [*Id.* at p. 10]. Finally, plaintiffs suggest that the November 2012 bar check was "set up" because of the 2011 encounter between plaintiffs and Trooper Ray [*Id*].

To the extent that plaintiffs complain about the defendants' entry into the Open Door and observation of the public areas of the restaurant, there is no reasonable expectation of privacy in the areas of the restaurant where the public was invited to enter and to transact business. *Maryland v. Macon*, 472 U.S. 463, 469 (1985). It is undisputed that during the October 2012 bar check Lt. Ruskey believed that he observed a crime, *i.e.*, that Mr. Strong had served alcohol to an underage customer. Thus, Lt. Ruskey had reasonable suspicion to investigate that potentially criminal conduct. *Terry v. Ohio*, 392 U.S. 1, 22 (1968). It is also undisputed that Lt. Ruskey asked Mr. Strong for his identification and Mr. Strong repeatedly refused to provide it. It is well settled that asking a person for identification does not, by itself, constitute a Fourth Amendment

seizure and is a routine part of a *Terry* stop. *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cnty.*, 542 U.S. 177, 185 (2004); *United States v. Campbell*, 486 F.3d 949, 956 (6th Cir. 2007) ("no seizure occurs when police ask questions of an individual, [and] ask to examine the individual's identification") (quoting *Florida v. Bostick*, 501 U.S. 429, 439 (1991)).

Mr. Strong's refusal to provide his identification prolonged the questioning; there was no unnecessary delay to a diligent investigation that was attributable to Lt. Ruskey. *See United States v. Sharpe,* 470 U.S. 675, 687-88 (1985). In considering the duration of a *Terry* stop, the Court considers whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, without unrealistically second-guessing the officers' actions. *Id.* at 686. Lt. Ruskey diligently tried to investigate what he observed and the delay in this case is entirely attributable to Mr. Strong. The fact that Lt. Ruskey followed Mr. Strong into "private" areas of the restaurant does not convert a reasonable, diligent investigation into a search in violation of the Fourth Amendment. Lt. Ruskey was not "searching" the private premises of the restaurant; he was merely trying to complete his investigation. Moreover, an unlawful seizure only occurs when an officer, without reasonable suspicion, in some way restrains the liberty or freedom of movement of a citizen. *United States v. Richardson,* 385 F.3d 625, 629 (6th Cir. 2004) ("One's liberty is restrained when a reasonable person would not feel free to walk away and ignore the officer's requests"). Mr. Strong's movements were unencumbered as he continued to move around the restaurant and conduct business [Doc.

36-5 at p. 3]. Thus, there was no unlawful search or seizure during the October 2012 bar check.

With respect to the November 2012 bar check, it is undisputed that Agent Boleyn was authorized by ABC Rule 0100-01-.03 to enter any area of the restaurant, including "private" areas such as the office. It is also undisputed that the only "private" area of the restaurant which defendants allegedly entered on this date is the office while Agent Boleyn was also there [Doc. 36-4 at p. 20]. Thus, while Agent Boleyn was there, defendants were authorized to enter any areas of the premises and there was no Fourth Amendment violation. Tenn. Code Ann. § 57-3-412(b)(2). To the extent that the Fourth Amendment claim is based on Mr. Strong's arrest, that claim is precluded based on his admission that he was arrested by Sergeant Brown and not one of the defendants, and the finding of probable cause of his arrest, as discussed *supra*.

E. Qualified Immunity

Defendants also argue that they are entitled to qualified immunity because they did not violate any of plaintiffs' clearly established constitutional rights [Doc. 37 at pp. 16—19]. Plaintiffs argue that the defendants are not entitled to qualified immunity because of the "personal conduct and animus" they displayed and "the manipulation of the ABC agent by Ruskey" [Doc. 42 at p. 13]. Plaintiffs argue that this conduct shows that the defendants knew they were violating plaintiffs' constitutional rights and that their actions were based on racial animus [*Id*. at pp. 14—15].

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation"; it is "an *immunity from suit* rather than a mere defense to liability, and like

an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Humphrey v. Mabry,* 482 F.3d 840, 847 (6th Cir. 2007) (citation omitted). "Government officials who perform discretionary functions are generally protected from liability for civil damages as long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Holzemer v. City of Memphis*, 621 F.3d 512, 518-19 (6th Cir. 2010) (citations omitted).

A three-step analysis is employed by the Sixth Circuit for analyzing claims of qualified immunity. First, a court determines whether, "based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred"; second, a court considers "whether the violation involved a clearly established constitutional right of which a reasonable person would have known"; and third, a court determines "whether the plaintiff has offered sufficient evidence 'to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Holzemer*, 621 F.3d at 519 (citations omitted). There is no requirement that this inquiry be performed in sequence, *id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 227 (2009)), and if a plaintiff fails to establish any one element, the defendant's request for qualified immunity must be granted, *Radvansky*, 395 F.3d at 302 (citation omitted).

In light of the foregoing analysis, the Court finds that plaintiffs have not shown a violation of constitutional rights that were "clearly established" at the time of the October

2012 and November 2012 bar checks. The cases cited above and the parties' pleadings demonstrate that there is no constitutional violation where the officers did not violate rights of due process, privileges and immunities, equal protection, or search and seizure. Thus, such claims cannot be "clearly established." Accordingly, the Court finds that defendants are entitled to the defense of qualified immunity.

## V. Conclusion

For all of the foregoing reasons, the Court finds that defendants' motion for judgment on the pleadings [Doc. 15] should be **DENIED as moot**, defendants' motion for summary judgment [Doc. 36] should be **GRANTED**, and this case should be **DISMISSED**. An appropriate order will be entered.

s/ Thomas W. Phillips
SENIOR UNITED STATES DISTRICT JUDGE